# THE STATE OF UTAH, RESPONDENT *v.* W. A. MANNION, APPELLANT.

19  505
s19 515
19  505
24  486

CRIMINAL PROCEDURE — CONSTITUTIONAL RIGHT OF DEFENDANT TO BE CONFRONTED BY WITNESSES — DENIAL OF — PREVENTS FAIR TRIAL. — CONST., ART. 1, SEC. 12 — RAPE — ORDER REMOVING DEFENDANT OUT OF SIGHT AND HEARING OF PROSECUTRIX WHILE ON WITNESS STAND — PREJUDICIAL ERROR.    LATITUDE OF COURT.

1. *Criminal Procedure — Constitutional Right of Defendant to Be Confronted by Witnesses — Denial of — Prevents Fair Trial — Const., Art 1, Sec. 12.*

Under the constitution (Art. 1, Sec. 12) and the statutes of this State, a person accused of crime has the constitutional right to be present at his trial in person, and by counsel, to appear and defend against the accusation preferred against him in person and by counsel; to examine and cross-examine witnesses in person or by counsel; to see the face and hear the testimony of the witnesses; the right to see and be seen, to hear and be heard, under such reasonable regulations as the law establishes; to be confronted by his accusers and witnesses against him, face to face, and he can not be denied this constitutional right because of the youth, incapacity, or unwillingness of his accusers to meet him face to face in the presence of the court and jury; and an order of the trial court to permit a witness to turn her back to the accused, and directing the removal of the defendant from his counsel twenty-four feet away from the prosecuting witness testifying against him, so far that the defendant could neither see nor hear the witness, or see the jury, on account of the distance and intervening obstacles, denied the defendant a constitutional right, and prevented him from having a fair trial.

2. *Rape — Order Removing Defendant Out of Sight and Hearing of Prosecutrix While on Witness Stand — Prejudicial Error.*

In a prosecution for assault with intent to commit rape, the prosecutrix, on taking the stand, and without further question, stated that she was afraid to testify, because she was afraid of the defendant, and the court, without comment or

cross-examination, ordered the defendant away, out of sight and hearing of the witness and jury.

*Held,* Prejudicial error, because the jury might infer that the court not only believed the statement, but believed the witness had good reasons for making it.

3. *Latitude of Court.*

While in cases of this character, where a witness is young, the court should protect the witness from imposition, regulate the procedure and control the conduct of the accused, within the rules of law, it should also see to it that the constitutional rights of the accused are not denied him.

(Decided June 6, 1899.)

Appeal from the Third District Court, Salt Lake County, Hon. A. G. Norrell, *Judge.*

Defendant was convicted of the crime of assault with intent to commit rape.

On the trial, when the prosecuting witness was testifying, the presiding judge ordered defendant from the presence of the witness, and ordered him to take a seat in a part of the court room away from the jury and witness where he could neither hear said witness nor could he see her nor the jury while she was so testifying.

Defendant appeals from the conviction and judgment entered thereon, upon the ground that he was absent and out of the presence of the witness when testifying; that he was not personally present at the trial, and that he was not confronted by the witness against him, as provided by Art. 1, Sec. 12, of the constitution of the State of Utah. *Judgment reversed. New trial granted.*

*S. H. Lewis, Esq.,* for appellant.

Defendant in case of felony must be present at the trial. (Revised Statutes of Utah, Sec. 4811.)

"If the prosecution is for a felony, the defendant must

be personally present at the trial. * * * " Bishop's New Criminal Procedure, 271, 273, and cases cited; *Lewis* v. *United States*, 146 U. S., 370; *Fight* v. *State*, 28 Am. Dec., 638, and note; *Roberts* v. *State*, 111 Indiana, 340.

The defendant can not waive his presence, or his rights guaranteed by the constitution. He must be confronted with the witnesses against him. Art. 1, Sec. 12, State Constitution; *Maurier* v. *People*, 43 N. Y., p. 1; *Lewis* v. *U. S.*, 146 U. S., 370; 64 N. C., 74; Bishop's New Criminal Procedure, Sec. 1194.

Counsel's presence does not satisfy the law.

Bishop's New Criminal Procedure, Sec. 271. *State* v. *Jenkins*, 84 N. C., 82; *State* v. *Mysick*, 38 Kansas, 238.

In removing the prisoner, the judge assumed by that act — and so impressed the jury — that the witness spoke the truth when she said she was afraid.

The jurors are the sole judges of the facts. Sec. 3147, Subdiv. 4, Rev. Stat. of Utah.

*Hon. A. C. Bishop*, Attorney-General, *William A. Lee*, Deputy Attorney-General, and *Ray Van Cott, Esq.*, for respondent.

The order removing appellant to the place complained of did not deprive him of the right to be personally present at the trial. *State* v. *Laxton*, 78 N. C., 570; Thompson on Trials, Vol. 1, Sec. 964; see also 11 Criminal Law Magazine and Reporter, 173, 178.

The constitutional requirement that the accused shall be confronted upon his trial by the witnesses against him, has sole reference to the personal presence of the witnesses for the prosecution. *Summons* v. *The State*, 5 Ohio State, 325, 340, 341; *Mattox* v. *United States*, 156

U. S., 237, 242 – 245: *Howser* v. *Commonwealth*, 51
Pa. St., 332, 337, 338; *Westfall* v. *Madison County*, 62
Iowa, 427, 429; *Bell* v. *State*, 28 American Reports,
429; *Summons* v. *The State*, *supra*.

The judge, in ordering the appellant to the position
complained of, acted within the sound discretion of the
court, and in nowise invaded the province of the jury.
*State* v. *Laxton*, 78 N. C., 564.

MINER, J.

The defendant was convicted of the crime of an assault
with intent to commit a rape upon one Anna Bell Low.
It appears from the record that the prosecutrix upon
whom the alleged offense was attempted was about six
years old, and when she was sworn, and before giving
any testimony, stated in the presence of the court and
jury, as follows: "I am afraid to tell, because I am afraid
of my papa;" meaning the defendant. The defendant was
at this time sitting with his counsel in front of the witnes
and jury, and the court thereupon, without further testi-
mony or cross-examination of the witness, ordered the
defendant to take a seat in the southwest corner of the
court room, south of the entrance to the bar, and facing
the judge, clerk's bench, and jury box. The prisoner's
bench was one foot five inches in height, twenty-seven
feet from the jury box, twenty-four feet west from the
witness Low, when testifying. The first row of jurors
were seated in chairs two and one-half feet high
from the floor. The judge and clerk's desks were three
feet in height. These were the only objects intervening
between the defendant and the witness, except the judge,
clerk, and reporter. Witness Low, when she testified,
sat in a chair one and one-half feet high, and faced the
jury, with her back to the defendant. From the place

where the defendant was ordered to sit during the examination of the witness he could not see all of the jurors, neither could he see the witness, nor could he hear any of her testimony when given to the jury. The defendant was represented by counsel, who then and there objected to said order of the court, on the ground that the defendant was not permitted to confront the witnesses against him; which objection was overruled, and the defendant excepted to the ruling of the court.

During all the time the witness was giving her testimony she sat upon a chair facing the jury, with her back to the defendant, as ordered by the court. After the testimony of this witness was finished the defendant was permitted to return to his former seat, within the bar, by his counsel. The witness Low was the only witness who testified to the *corpus delicti*. Prior to judgment upon the verdict, the defendant, by his counsel, moved the court to set aside the verdict, and to grant a new trial on the ground that the trial was had in the absence of the accused; that the prosecutrix was permitted to testify with her back to the defendant, so that he could not hear her testimony or see her face to face; that the defendant was not permitted to be confronted by the witnesses against him while testifying; that the testimony of the prosecutrix was permitted to go to the jury when the defendant was out of sight and hearing of the witness, to his prejudice; that the court during the trial ordered the defendant out of the presence and hearing of the prosecutrix, when she was giving her testimony against him, and that he was prejudiced by such ruling and order of the court. From the affidavit of the defendant, used on the motion for new trial, it appears, "That on said trial, one Anna Bell Low testified before the jury, on behalf of the State, and against this affiant; that before she so testified,

the presiding judge at said trial ordered defendant from the presence of said witness, and ordered him to take a seat in a part of the court room away from the jury and witness; that by order of said court, said defendant took said seat and remained there until said witness had testified in the case against this defendant; that defendant, owing to his being ordered out of the presence of said witness, and away from the jury, by said court, could neither hear, nor did he hear what said witness testified to, nor could he see the said witness while she testified as above stated, nor could he see the jury while she was so testifying; that the defendant then and there objected to the said first order of the said judge, and objected to being absent and out of the presence of said witness, which objection the court overruled, to which ruling of the court affiant excepted."

The court denied the motion, and refused to grant a new trial, to all of which the defendant excepted. Thereupon the defendant was sentenced to imprisonment in the State prison for a period of seven years. From this judgment and conviction the defendant appeals to this court.

Under the statutes of Utah, when a defendant in a criminal case is accused of a felony he must be personally present during the trial. This is a right he can not waive. The public has an interest in the life and liberty of an accused person. That which the law requires and makes essential in the trial of persons accused of a felony can not be dispensed with, neither by the consent of the accused, nor by his failure to object to unauthorized methods pursued by those in authority. Rev. Stat. Utah, 1898, Sec., 4811; *Hopt* v. *People*, 110 U. S., 574; 1 Bish. New Crim. Proc., Secs. 271, 273; 1 Bish. Crim. Proc., Sec. 273; Art. 1, Sec. 12, Const. of Utah;

*Lewis* v. *U. S.*, 146 U. S., 370 ; *State* v. *Myrick*, 38 Kan., 238.

Art. 1, Sec. 12, State Const., provides that "In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to be confronted by the witness against him." * * *

In this case the accused had a right to appear in the case and defend in person and by counsel, and to be confronted by witnesses against him. This constitutional right was denied the accused.

Webster defines confront as follows : 1. To stand facing or in front of ; to face. 2. To stand in direct opposition ; to oppose. 3. To sit face to face for examination and discovery of the truth ; to sit together for comparison ; to compare.

Bouvier's Law Dictionary defines confrontation in criminal law to mean "The act by which a witness is brought in the presence of the accused ; so that the latter may object to him, if he can, and the former may know and identify the accused, and maintain the truth in his presence. No man can be a witness unless confronted with the accused, except by consent."

In Anderson's Law Dictionary, page 226, the following definition is given : " Confront. To bring face to face. The constitutional provision that the accused shall be 'confronted with the witnesses against him,' means that the witnesses on the part of the State shall be personally present when the accused is on trial; or that they shall be examined in his presence, and be subject to cross-examination by him."

In *State* v. *Thomas*, 64 N. C., 74, it is said : " In all criminal prosecutions every man has a right to be

informed of the accusation against him, and to confront the accusers and witnesses with other witnesses. We take it that the word "confront" does not simply secure to the accused the privilege of examining witnesses in his behalf, but is in affirmance of the rule of the common law, that in trial by jury the witnesses must be present before the jury and accused, so that he may be confronted, that is, put face to face."

In speaking of the rights of the defendant, upon a criminal trial, the court, in the case of *Brown* v. *State*, 38 Texas, 483, said : "The accused should not only be within the walls of the courthouse, but he should be present where the trial is conducted, that he may see and be seen, hear and be heard, under such regulations as the law established."

The doctrine now well established is that except to documentary evidence, and dying declarations, one accused of a felony can not be convicted except on the testimony of witnesses whom, now on the trial, or on some previous occasion, he has had the opportunity of meeting face to face and openly examining and cross-examining in the presence of the parties and the jury. 1 Bish. New Crim. Proc., Sec. 1194.

Under the constitution and statutes of the State the accused had a right to be present at the trial, to be confronted by the witnesses against him, and to meet his accusers face to face. He also had the right to appear and defend against the accusation preferred against him in person and by counsel. He had the right not only to examine the witnesses, but to see into the face of each witness while testifying against him, and to hear the testimony given upon the stand. He had the right to see and be seen, hear and be heard, under such reasonable regulations as the law established. By our constitu-

tion it is clearly made manifest that no man shall be tried and condemned in secret, and unheard. When the court ordered the defendant away from his counsel, twenty-four feet away from the witness who was testifying against him,— so far away that he could not hear her testimony nor see her face because of intervening obstacles, and permitted her to turn her back to the defendant, so that he could not see her while testifying,— he denied the defendant a constitutional right, and prevented him from having a fair trial.

When the witness stated, in the presence of the jury, that she was afraid to tell, because she was afraid of the defendant, the court, without further comment, or cross-examination of the witness, ordered the defendant away, out of the sight and hearing of the witness. From this order the jury might draw the inference that the court not only believed her statement, but believed the witness had good reasons for making the statement. The order was consequently prejudicial to the defendant.

In cases of this character, where the witness is young, the court should have considerable latitude in protecting the witness from the effects of improper conduct and language of parties and of counsel, but in doing so the constitutional right of the defendant must be protected. The defendant was entitled to a trial in accordance with law. He was entitled to be confronted by witnesses of the State face to face, and he can not be denied a constitutional right because of the youth, incapacity, or unwillingness of the witness brought against him to meet him face to face.

The presumption of innocence follows every man accused of crime until the verdict of guilty is pronounced. The presence of such a child, under such circumstances, doubtless made a strong appeal to the court for protec-

19 UTAH—33.

tion. This was natural. But it must not be forgotten that in this class of cases the " accusation was easy to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent," coming as it did from a child of six years, with no other witnesses to the act, it was proper that the defendant should have a full opportunity to see her and cross-examine the witness.

The constitutional right to be confronted by witnesses against him, and to defend in person, would be of little avail to the accused if he could be compelled to remain away, during his trial, out of the sight and hearing of the witnesses against him. The right to defend in person would be a meaningless term if the accused is required to remain so far away from the witnesses that he can not hear the testimony, and therefore could not cross-examine them. The right of having counsel in his defense would amount to but little, if the accused is required to remain so far away from him that he can not confer with him concerning the testimony that is given against him.

The jury had a right to know whether the witness herself knew the facts stated by her from her own knowledge and recollection, whether she was induced to make the charge through the plotting or scheming of others, or whether she was controlled and induced to make the voluntary statement that she was afraid of the defendant, by those having her under their control.

While the testimony of such a witness, if she be shown to understand the obligation of an oath, is competent, proper, and entitled to credit the same as any other, yet it must not be forgotten that a child of six years is quite as likely to be mistaken, or to repeat the statements of those controlling her, as other witnesses. While the court should protect a witness from imposition, regulate the

procedure, and control the conduct of the accused, within the rules of law, it should also see to it that the constitutional rights of the accused are not denied him.

We are of the opinion that the court erred in making the order complained of, and in denying the defendant's motion for a new trial.

The judgment of the district court is reversed, and the cause remanded with directions to grant a new trial.

BASKIN, J., concurs.

BARTCH, C. J., concurs in the judgment.

---

## CONCURRING OPINION BY BARTCH, C. J.

RECORD ON APPEAL — IMPORTS ABSOLUTE VERITY — CRIMINAL PRO-CEDURE — DISCRETION OF TRIAL COURT — CONSTITUTIONAL RIGHTS OF DEFENDANT. CONST., ART. 1, SEC. 12 — "TO BE CONFRONTED," MEANING OF.

1. *Record on Appeal — Imports Absolute Verity.*

 The record filed in this court must be held to import absolute verity, and although certain matters stated in the brief of counsel, but omitted in the bill of exceptions, would possibly, if they had been included, have caused a different decision, the judgment under the circumstances seems to be a logical sequence.

2. *Criminal Procedure — Discretion of Trial Court — Constitutional Rights of Defendant.*

 The trial court in a criminal case has the right, in the interests of justice, to exercise a reasonable discretion in removing the accused to some other place not without the presence of the witness and jury, without violating the constitutional right of an accused person "to be confronted by the witnesses against him."

3. *Const., Art. 1, Sec. 12 — " To Be Confronted," Meaning of.*

 The words, "to be confronted," as used in the State constitution, Art. 1, Sec. 12, have reference to cross-examination of the witness in the presence of the accused, and not to sitting face to face in a literal sense.

BARTCH, C. J., concurring in the judgment.

I concur in the judgment of reversal, but not in all of the reasoning, nor in all of the propositions of law laid down in the opinion. If the statements purporting to have been made by the court below, contained in the attorney-general's brief, as to what took place immediately preceding the order complained of, and those indicating the circumstances connected with the making of the order, were in the bill of exceptions, I would dissent, but as they are not in the record, and since the record, as filed in this court, must be held to import absolute verity, the judgment announced seems to be a logical sequence, even though there be a miscarriage of justice, which, if the prisoner is in fact guilty, is likely to result, in case the opinion be literally complied with at the next trial. From the tenor of the opinion it would seem that, regardless of any circumstances, a court, in the trial of a criminal case, has no discretion whatever respecting the nearness of defendant to a witness, that he may, if he so wills, seat himself immediately in front of his victim who is on the witness stand, and remain there, even though he so intimidate the witness by his close proximity and insistent look that the witness will be unable to testify. If it were shown in the record, as intimated in the brief referred to, that repeated efforts to elicit the testimony of the witness were unsuccessful because of the manner of the defendant before the witness, then in my judgment the order complained of could not be regarded as reversible error. The court, under circumstances like these referred to, would clearly have the right, in the interests of justice, to exercise a reasonable discretion in removing the prisoner to some other place not without the presence of the witness and jury. The constitutional right of one accused of crime "to be confronted by the

witnesses against him" was never intended as an instrument with which to defeat justice.

Where the witnesses for the prosecution are present at the trial, are examined in the presence and within the hearing of the accused and jury, and an opportunity afforded the prisoner for cross-examination, I am of the opinion the constitutional provision is complied with, even though the prisoner be not permitted to sit immediately in front of the witness, when such position would cause intimidation and prevent the eliciting of testimony. Doubtless the purpose of that constitutional provision is to compel the prosecution to produce its witnesses at the trial, and to prevent the admission of testimony by deposition, so as not to deprive the accused of cross-examination in his presence before the jury.

The words, "to be confronted," manifestly have reference to cross-examination of the witness in the presence of the accused, and not to sitting face to face in a literal sense.    This is manifest from the authorities.

In *Summons* v. *The State*, 5 Ohio St., 325, a constitutional provision that "the party accused shall be allowed to meet the witnesses face to face," was held to have reference to the personal presence of the witnesses called to testify, and in delivering the opinion of the court, Mr. Chief Justice Bartley said:

"The object of this provision manifestly is to exclude testimony by depositions, by requiring it to be given orally, in the presence of the accused, on the trial. The admission of testimony by depositions against the accused in a criminal cause, would often afford the prosecutor great advantages over him, as well as furnish, at times, opportunities for abuses beyond the reach of detection by the defendant. Deprived of this right, the accused would often be without the opportunity of cross-examination,

without the means of hearing, seeing, or knowing the persons who testify against him, and without the advantage of an oral examination of the witnesses before the jury which is to decide upon his case. But important as this right is, as established at common law, and secured by the constitution, it has application to the personal presence of the witness on the trial, and not to the subject matter or competency of the testimony to be given. The requirement that the accused shall be confronted, on his trial, by the witnesses against him, has sole reference to the personal presence of the witnesses, and in nowise affects the question of the competency of the testimony to which he may depose."

So, in *Howser* v. *Commonwealth*, 51 Pa. St., 332, it was held, Mr. Chief Justice Woodward delivering the opinion of the court, that "confronting witnesses" means cross-examination in the presence of the accused.

In *Mattox* v. *United States*, 156 U. S., 237, where a constitutional provision that the accused shall "be confronted with the witnesses against him" was interpreted, Mr. Justice Brown, speaking for the court, said:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand, and the manner in which he gives his testimony, whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of any of the safeguards,

even by the death of the witness; and that, if notes of his testimony are permitted to be read, he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case." And again he said:

"A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant."

So, the supreme court of Iowa, in *Loan* v. *Etzel*, 62 Ia., 427, with reference to the constitutional provision that the accused shall "be confronted with the witnesses against him," said: "We understand this to mean that the witnesses on the part of the State shall be personally present when the accused is on trial." Anderson's Law Dictionary, 226; *Commonwealth* v. *Richards*, 18 Pick., 434; *United States* v. *Gibert*, 25 Fed. Cases, 1313, No. 15204; *People* v. *Oiler*, 66 Cal., 101; *Bell* v. *State*, 28 Am. Rep., 429; *State* v. *Laxton*, 76 N. C., 564.

I am of the opinion that a trial court has power, in the conduct of a criminal prosecution, to make such an order as is in question in this case, whenever the facts and circumstances warrant it, and that an accused has no right to insist on sitting in such a position as to intimidate a witness and defeat the ends of justice. In the conduct of a criminal, the same as in a civil jury trial, much ought necessarily be left to the good sense and judgment of the judge. It is his duty to exercise a sound discretion in all matters appertaining to the orderly progress of the trial, and his action should not be interfered with, unless there is a clear abuse of discretion.

Mr. Justice Miner, in his opinion, uses language as follows: "The jury had a right to know whether the witness herself knew the facts stated by her from her own knowledge and recollection, whether she was induced to make the charge through the plotting or scheming of others, or whether she was controlled and induced to make the voluntary statement that she was afraid of the defendant, by those having her under their control. While the testimony of such a witness, if she be shown to understand the obligation of an oath, is competent, proper, and entitled to credit the same as any other, yet it must not be forgotten that a child of six years is quite as likely to be mistaken, or to repeat the statements of those controlling her, as other witnesses."

With all due respect for the majority opinion of the court, I am impelled to say that I find nothing whatever in the record which warrants the insinuation that others have been plotting against the defendant. He was charged, it is true, with one of the most heinous crimes known to the law — a crime which, from time immemorial, has shocked every civilized community in which it has been perpetrated, and he was convicted by a jury of his peers of an attempt to commit that offense, but there does not appear to be even a hint in the record that either the charge or conviction was the result of the "plotting or scheming" of others, or that the infant witness was induced by others to make the "voluntary statement" that she was afraid of the defendant, or any other statement. Nor is there anything in the record to indicate that any one, except the defendant himself, exercised any undue or improper influence over the witness. Except the bare statement, "I am afraid to tell, because I am afraid of my papa," made by the little one on the stand, the record contains no evidence of witnesses, the appeal

being based upon the affidavit of the defendant relating entirely to the order of the court.

In my judgment, therefore, the language above quoted is not applicable to this case.

The result of this appeal emphasizes the importance of the prosecution exercising vigilance in the settlement of a bill of exceptions, so that the record will be made to reflect accurately the facts and circumstances which may have led up to any action of the court which is made the basis of an exception.